**LOFT, Inc., v. BOWERS, Collector of Internal Revenue.**

Circuit Court of Appeals, Second Circuit. December 17, 1928.

No. 27.

Gilbert & Gilbert, of New York City (A. S. Gilbert, of New York City, of counsel), for plaintiff in error.

Charles H. Tuttle, U. S. Atty., of New York City (Edward Feldman, Asst. U. S. Atty., of New York City, of counsel), for defendant in error.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. This action was brought to recover $36,772.-99, war profits taxes for the year 1918, alleged to have been illegally exacted. Prior to the year 1916 the candy business now conducted by the plaintiff company was owned by George W. Loft, who did not carry good will as an asset on his books. In January, 1916, the business was incorporated, with an authorized and issued capital stock of $4,-000,000. In computing the taxes for the year 1918 the Commissioner allowed a value on good will for invested capital purposes of $1,-000,000, or 25 per cent. of the par value of the capital stock of the corporation outstanding. In determining the value of the good will in the pre-war period for invested capital purposes, the Commissioner fixed $1,000,-000, the same figure that he had used for the year 1918. The proof showed that the cash value of the good will, January, 1911 (the beginning of the pre-war period) was $477,-

655.35, and that the value on January 1, 1916, when the business was incorporated, was $1,200,390; but there was issued against the good will stock of the par value of $2,-367,316.76. It was never purchased for cash, but arose from the business.

The purpose of the war profits tax was to subject to a peculiar burden of taxation the income of any business which exceeded what was regarded as a normal return upon the capital embarked in it. In order to reach the so-called war profit, and tax it at 80 per cent. under the "third bracket" of section 301 of the Revenue Act of 1918 (40 Stat. 1088), which applied to this case, it was necessary to compare the earnings of the business between the pre-war period and the war period. The tax provided in the third bracket is:

"The sum, if any, by which 80 per centum of the amount of the net income in excess of the war-profits credit (determined under section 311) exceeds the amount of the tax computed under the first and second brackets."

Section 311 provides:

"That the war-profits credit shall consist of the sum of:

"(1) A specific exemption of $3,000; and

"(2) An amount equal to the average net income of the corporation for the prewar period, plus or minus, as the case may be, 10 per centum of the difference between the average invested capital for the prewar period and the invested capital for the taxable year."

It was provided in article 781 of Regulation 45 as follows:

"*War Profits Credit.*—Ordinarily the war profits credit consist of the sum of the specific exemption of $3,000 and an amount equal to the average net income of the corporation for the pre-war period, plus 10 per cent. of the excess of the invested capital for the taxable year over the average invested capital for the pre-war period, or minus 10 per cent. of the excess of the average invested capital of the pre-war period over the invested capital for the taxable year."

Under the Regulations above, the corporation is entitled to a credit of 10 per cent. of the amount by which the invested capital for the taxable year exceeds the average invested capital for the pre-war years. Thus, the lower the invested capital for the pre-war year, the higher the amount of 10 per cent. war profits credit. Manifestly, then, the valuation of the good will of the plaintiff at more than its real worth for the pre-war period correspondingly decreased the credit and increased the war profits tax.

The correctness of the computation of the

Commissioner in his valuation of the item of good will depends upon the method to be adopted in valuing invested capital for the pre-war and taxable years. The basis for determining invested capital for any year appears in section 326 of the Act. Subdivision (a) 4 and 5 of that section includes in invested capital:

"(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest;

"(5) Intangible property bona fide paid in for stock or shares on or after March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year, whichever is lowest: Provided, that in no case shall the total amount included under paragraphs (4) and (5) exceed in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year."

The pre-war period is defined in section 310 of the act and means the calendar years 1911, 1912, and 1913. The value of the good will and intangibles during the pre-war years is taken at $477,655.35, and during the taxable year at $1,200,390.

In La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998, where an appreciation in value of ore lands over the purchase price had occurred, and the book value of this asset was increased, and a stock dividend was issued against the increased value, it was held that the appreciation could not be treated as "invested capital" before computation of the war excess profits tax levied under the Act of October 3, 1917 (40 Stat. 300). The act of 1917 closely resembles the one now before us, and the case cited is controlling authority for the proposition that a mere appreciation in value of an asset, whether tangible or intangible, is not "invested capital." Such has been held to be the rule applicable to the act of 1918 in Lee Hardware Co. v. United States (C. C. A.) 25 F.(2d) 42; Gauley Mt. Coal Co. v. Commissioner of Internal Revenue (C. C. A.) 23 F.(2d) 574. See, also, Willcutts v. Milton Dairy Co., 275 U. S. 215, 48 S. Ct. 71, 72 L. Ed. 247.

The statutory provisions of the act of 1918 which we have cited related to a continuous corporation existing during and after the pre-war period. To cover the case of an individual conducting a business during the pre-war period, which he afterwards incorporated (designated as "change of ownership" in the statute), section 330 was enacted. The pertinent clauses are as follows:

"That in the case of the reorganization, consolidation, or change of ownership after January 1, 1911, of a trade or business now carried on by a corporation, the corporation shall for the purposes of this title be deemed to have been in existence prior to that date, and the net income and invested capital of such predecessor trade, or business for all or any part of the prewar period prior to the organization of the corporation now carrying on such trade or business shall be deemed to have been the net income and invested capital of such corporation.

"If such predecessor trade or business was carried on by a partnership or individual the net income for the pre-war period shall, under regulations prescribed by the Commissioner with the approval of the Secretary, be ascertained and returned as nearly as may be upon the same basis and in the same manner as provided for corporations in title II, including a reasonable deduction for salary or compensation to each partner or the individual for personal services actually rendered. * * *

"If any asset of the trade or business in existence both during the taxable year and any pre-war year is included in the invested capital for the taxable year but is not included in the invested capital, for such pre-war year, or is valued on a different basis in computing the invested capital for the taxable year and such pre-war year, respectively, then under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary such readjustments shall be made as are necessary to place the computation of the invested capital for such pre-war year on the basis employed in determining the invested capital for the taxable year."

The plaintiff contends that the concluding words of section 330, providing that in a case like the present such "readjustments shall be made as are necessary to place the computation of the invested capital for such pre-war year on the basis employed in determining the invested capital for the taxable year," require the good will, which was valued at $1,000,000, or 83 per cent. of its actual value of $1,200,390 for the taxable year, to be valued at the like ratio of 83 per cent. of $477,655.35, the actual value for the pre-war year.

It is manifest that, if such a *basis* were taken, an entirely different rule would be adopted for taxation of a corporation having a continuous existence during the pre-war and taxable period and a business conducted by an individual during the pre-war period and afterwards taxed as a corporation for war profits under the statutory provisions we have mentioned. Such a result affords the strongest reason for rejecting plaintiff's claim.

The object of the tax in question was to reach abnormal profits, due to the war, and to render them, to a large extent, available to meet the enormous expenses of the government in prosecuting it. A vague intangible like good will was not only most difficult to value fairly, but was most likely to increase in value because of war conditions. How carefully any inflation of its value was guarded against is seen from the provisions of section 326 (a) 4. It would seem quite impossible, after the decision of La Belle Iron Works v. United States, supra, to suppose that an appreciation of the value of such an item could be taken as a part of plaintiff's invested capital, for the reduction of its war profits.

Now, section 330 makes the invested capital of the predecessor business for the pre-war period "prior to the organization of the corporation * * * the invested capital of such corporation." In other words, it carries back the later valuations for the earlier period. Had there been a continuous corporation, the pre-war valuations would have been taken for the taxable period. By either method the same result would have obtained, namely, the disregard of increased values for the purpose of increasing the war profits credit. The provision of the last clause of section 330, that "such readjustments shall be made as are necessary to place the computation of the invested capital for such pre-war year on the basis employed in determining the invested capital for the taxable year," in cases where any asset is included in the invested capital for the taxable year, but is not included in the invested capital for the pre-war year, or is valued on a different basis for the taxable year and the pre-war year, is to be construed with the prior clauses of the section. It means, for present purposes, that any asset which has appreciated in value shall be taken just as its value is computed in the invested capital of the taxable year.

Section 326 (a) (4) prescribes just how the good will shall be valued as a part of invested capital for the taxable year. The actual cash value at the time it was paid in was $1,200,390; the par value of the stock issued therefor was $2,367,316.76; 25 per cent. of the par value of the total stock of the corporation outstanding on March 3, 1917 (being $4,000,000), was $1,000,000. By the provisions of the section the lowest of the three figures must be selected; i. e., $1,000,000. This amount was properly taken by the Commissioner, both for the pre-war and the 1918 valuation of good will, as an item of the invested capital. By this computation the appreciation in value was not regarded, and the plaintiff was placed in the position of an ordinary corporation in existence during the entire period. Any other adjustment of values would have relieved a war profit from taxation, and made an unfounded discrimination in favor of individuals who incorporated their business.

It is said that, if it had been intended that the same amount should be used for both the pre-war year and the taxable year, the statute would have so provided. The invested capital for the two periods is in fact usually different, because new assets paid in for stock, as well as accumulated earnings, are likely to have arisen since the pre-war period. The act, however, did not provide that the invested capital for both periods should be valued at the same amount but on the same *basis*; that is, under the rules laid down in section 326, supra, and without taking into account appreciations in value.

Judge Knox, who presided at the trial, rightly directed a verdict for the defendant, and the judgment is affirmed.